UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT DERRELL RUCKER,

        Petitioner,                                    Case No. 12-11111

v.                                           Honorable Thomas L. Ludington

WILLIE SMITH,

        Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO
APPEAL IN FORMA PAUPERIS**

Petitioner Robert Derrell Rucker is confined at the Kinross Correctional Facility in Kincheloe, Michigan. He filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by jury in the Saginaw County Circuit Court of first-degree felony murder, Mich. Comp Laws § 750.316(1)(b); possession of a firearm during the commission of a felony, Mich. Comp Laws § 750.227b; unlawful distribution of an imitation control substance, Mich. Comp Laws § 333.7341(3); and unlawful possession with intent to distribute an imitation control substance, Mich. Comp Laws § 333.7341(3). Petitioner was sentenced to life in prison without parole on the first-degree felony murder conviction, concurrent sentences of sixteen to twenty-four months on the imitation controlled substance charges, and received a consecutive two-year sentence on the felony-firearm conviction. Petitioner alleges that his right to a speedy trial was violated. The respondent has filed an answer to the petition, asserting that the claim lacks merit. Petitioner's claim does lack merit, and the petition will be denied.

# I

Petitioner's convictions arise out of an incident that took place in Saginaw, Michigan on March 24, 2008.

Christopher Akins was with Petitioner and Steven Winters in Saginaw, Michigan on the day of the incident.   The three men met up with the victim and another man. July 29, 2009 Hr'g Tr. 55–61.   Akins heard Petitioner and the victim discuss the purchase of drugs.   The victim told Petitioner that he did not want to purchase the drugs after tasting them and spitting them out.   *Id*. at 64.   Petitioner asked the victim "Can I get my money?"   Akins heard a gunshot and witnessed the victim fall down before observing Petitioner holding a gun in his hand.   *Id*. at 68–71.   After hearing the gunshot, Akins and Petitioner fled the area.   *Id*. at 73–74.   When Akins was interviewed by the police a few days later, he told them that Petitioner said after the shooting, "I shouldn't have done it" and "I shouldn't have shot him, bro."   *Id*. at 76–77.

At the preliminary examination, however, Akins testified that he did not see a gun at anytime that afternoon.   Akins further testified at the preliminary examination that he did not know what Petitioner had been trying to sell, did not hear any discussions about money, did not see a gun, or witness Petitioner offer drugs to the victim.   *Id*. at 81–88.

On March 27, 2008, Akins was interviewed a second time by the police with his mother present.   *Id*. at 90.   Akins told the police during this interview that there had been a "tussle" going on with the gun and that he did not know who had the gun.   *Id*. at 91.   Akins told the police during this interview that the gun was discharged while Petitioner and the victim were tussling, shoving, pushing each other back and forth, with the victim trying to grab something from Petitioner.   *Id*. at 94.   Meanwhile, Akins claimed that most of what he had previously told the police was untrue.   *Id*. at 97.   At trial, Akins claimed that Petitioner and the victim were tussling over money, not the

gun, when he observed Petitioner shoot the victim.   *Id.* at 102–03.

Steven Winters testified that he was present on the day in question when Petitioner and a man named Vic met up with his group.   *Id.* at 109–10.   Petitioner attempted to sell something to the victim, who indicated that the item was fake.   *Id.* at 111.   The victim informed Petitioner that he was not paying for the fake dope after tasting it.   *Id.* at 112–15.   Winters gave Petitioner a gun. *Id.* at 115.   The victim told Petitioner that he did not care about a gun and that Petitioner was going to have to shoot him.   Winters turned his head, before hearing a gunshot go off.   *Id.* at 119. Winters fled the scene, taking the gun and hiding it behind his grandmother's house.   *Id.* at 120–ʔ 21.   Winters gave the police false information about the location of the gun and when he went back to retrieve it, the gun was missing.   *Id.* at 124.

On cross-examination, Winters acknowledged telling the police that Petitioner, the victim, and the man named Vic had been tussling and fighting over the gun and that Petitioner's hand had not been on the trigger of the gun.   *Id.* at 139–40, 143–45.

Victor Stewart was the victim's friend.   July 30, 2009 Hr'g Tr. 8–9.   The victim wanted to buy some crack cocaine.   The two men went down the street where they met up with Petitioner and four other men.   *Id.* at 11–13.   Petitioner asked the men if they wanted to buy some crack cocaine.   The victim indicated that he wanted to buy $ 15.00 worth, and Petitioner gave it to him. The victim tasted it, indicated that it was not real, and gave it back to Petitioner.   *Id.* at 13–15. The victim demanded his money back, but Petitioner refused.   *Id.* at 17–18.   Stewart testified that there was no shoving or tussling going on between Petitioner and the victim.   *Id.* at 33.   Petitioner pulled a silver chrome gun out of his back pocket, pointed it at the victim, and shot him. Petitioner then reached into the victim's pocket, grabbed his money, and ran away.   *Id.* at 20, 31–ʔ 33.   Stewart had never seen Petitioner sell drugs before or carry a gun.   *Id.* at 37.   Stewart

-3-

admitted that he had some difficulty remembering things, because he was taking the medication Abilify and had been shot in the back of the neck since he last testified.   *Id.* at 41.

Petitioner's conviction was affirmed on appeal.   *People v. Rucker*, No. 294493 (Mich. Ct. App. Nov. 9, 2010).   Petitioner seeks a writ of habeas corpus contending that his Sixth Amendment right to a speedy trial was denied by delays attributable to the prosecutor.

## II

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).   An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."   *Id.* at 409.   A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."   *Id.* at 410–11.

-4-

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for

ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).   A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24.   Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786–87.

### III

Petitioner alleges that his right to a speedy trial was violated.   The Sixth Amendment guarantees a criminal defendant the right to a speedy trial.   U.S. Const. Amend. VI.   To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).   No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Barker*, 407 U.S. at 533.   The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009) (quoting *Barker*, 407 U.S. at 522).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530.   Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647,

651–52 (1992).   Courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial."   *Id.* 505 U.S. at 652 n.1; *United States v. Brown*, 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).   Petitioner was arrested on March 26, 2008 and was brought to trial some sixteen months later on July 28, 2009.   Because the sixteen month delay between Petitioner's arrest and trial is presumptively prejudicial, this Court must engage in an examination of the remaining *Barker* factors.   *See U.S. v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006).

With respect to the second *Barker* factor, the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005) (citing *Doggett*, 505 U.S. at 651).   When evaluating a speedy trial claim, delays caused by the defense are to be weighed against the defendant.   *Vermont v. Brillon*, 129 S. Ct. at 1290; *see also U.S. v. Brown*, 498 F. 3d 523, 531 (6th Cir. 2007).

Petitioner's trial was adjourned four times.   The first adjournment of the trial, from July 29, 2008 to October 14, 2008, was because the medical examiner, a necessary prosecution witness, was out of the country on July 29, 2008.   A valid reason for a delay in trial, such as an unavailable witness, weighs in favor of the government in a speedy trial analysis.   *See Barker*, 407 U.S. at 531; *U.S. v. Schreane*, 331 F. 3d 548, 554 (6th Cir. 2003).

The second adjournment of the trial, to January 6, 2009, occurred because Petitioner's defense attorney was scheduled to be out of the country on October 14, 2008 and because the preliminary examination transcripts had not yet been received and pre-trial motions had yet to be filed.   A delay in trial caused by a defense attorney's vacation request is weighed against the defendant.   *See generally U.S. v. Wangrow*, 924 F.2d 1434, 1436 (8th Cir. 1991).

Petitioner's trial was adjourned a third time, to May 19, 2009, because the trial judge had

two trials scheduled for January 6, 2009, the other criminal case was older than Petitioner's case, and there was no other judge available to handle Petitioner's trial.

Although government's delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government under *Barker*, more neutral reasons such as negligence or overcrowded dockets weigh against the state less heavily. *See Vermont v. Brillon*, 129 S. Ct. at 1290; *Barker*, 407 U.S. at 531; *Maples*, 427 F. 3d at 1026.

The final adjournment of the trial occurred because the prosecutor was scheduled to go on vacation. Although this last adjournment is attributable to the prosecution, this should be given minimal weight, because there is no indication that the prosecutor's action in going on vacation constituted a deliberate delay by the prosecutor to hamper the defense. *See Robinson v. State*, 695 S.E.2d 201, 204 (Ga. 2010).

At best, Petitioner has shown that two of the four adjournments are attributable to the prosecution, but those should be given minimal weight because there is no showing that these adjournments were done to gain a tactical advantage. Indeed, Petitioner's speedy trial claim fails because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*, 146 F. 3d 314, 327–28 (6th Cir. 2008); *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005). There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over Petitioner, *id.; See also Brown*, 498 F. 3d at 531.

With regard to the third *Barker* factor, "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived

of the right." *Barker*, 407 U.S. at 531–32.   A criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."   *Id.*

In the present case, Petitioner did not assert his right to a speedy trial until March of 2009, or some twelve months after he had been arrested.   Petitioner's twelve month delay in asserting his right to a speedy trial weighs against a finding that his right to a speedy trial was violated. *See U.S. v. Flowers*, 476 F. App'x 55, 63 (6th Cir. 2012).

Finally, Petitioner is not entitled to habeas relief on his speedy trial claim because he has not shown that his defense was prejudiced by this delay.   *Burns*, 328 F. Supp. 2d at 722.   Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical.   *See Trigg v. State of Tenn.*, 507 F. 3d 949, 954 (6th Cir. 1975).

Petitioner contends that he was prejudiced by the delay in bringing him to trial because the passage of time allowed the witnesses to change their stories and/or were unable to support his defense that the shooting was accidental.

Petitioner is not entitled to habeas relief on his claim because he has not shown that the witnesses's change in their stories was attributable to the delay in bringing him to trial.   *See Georgiadis v. Superintendent, Eastern Correctional Facility, Napanock, N. Y.*, 450 F. Supp. 975, 981 (S.D.N.Y. 1978).   Moreover, although Akins and Winters may have changed their stories, defense counsel was able to prepare his case, cross-examine these witnesses thoroughly, and bring out their prior inconsistent statements — including the fact that both men had indicated that Petitioner and the victim had been fighting over the gun in earlier statements (in support of Petitioner's defense).   Under the circumstances, Petitioner was not prejudiced by the delay in bringing him to trial.   *See U.S. v. Frye*, 489 F.3d 201, 213 (5th Cir. 2007).   Moreover, although

-9-

Victor Stewart testified that there had been no tussling going on between Petitioner and the victim prior to the shooting, he also admitted that his memory was poor in that he was taking Abilify and had been shot in the neck since the time of Petitioner's crime.   Although Petitioner claims that the delay in bringing him to trial prevented Stewart from corroborating his accident defense, Petitioner has provided this Court no evidence that Stewart would have testified favorably for Petitioner regarding his accident defense had the case gone to trial earlier, thus, Petitioner has failed to establish that he was prejudiced by the delay in bringing him to trial.   *See Hakeem v. Beyer*, 990 F. 2d 750, 763 (3rd Cir. 1993).   Petitioner is not entitled to habeas relief on his claim.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.   *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).   "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.   *Id.* at 336–37.   "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Accordingly, a certificate of appealability is not warranted in this case.   The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

V

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus, ECF No. 1, is **DENIED** with prejudice.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

Dated: June 5, 2013                                               s/Thomas L. Ludington
                                                                          THOMAS L. LUDINGTON
                                                                          United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and upon Robert Rucker, #739010, Kinross Correctional Facility, 16770 S. Watertower Dr. Kincheloe, MI 49788 by first class U.S. mail, on June 5, 2013.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS